Good morning, Your Honors. May it please the Court. In the 851 patent IPR decision, the sole disputed issue, which the Board failed to squarely address, is whether Guan's airbag 2 is at the absolute maximum fully expanded position at the start. For that to be true, a POSA would have to interpret Guan so that the airbag 2 is incapable of extending the slightest bit to the left past the position in Guan's figure. The Board, however, made no such finding and could not have done so for three reasons. First, Guan's electromagnet 5 is of a horseshoe shape, and its liver has a reciprocating motion, which makes it implausible that the liver 3 would not also move to the left end of the horseshoe magnet to create negative pressure. And that testimony is on Appendix 10723 through 10726, paragraphs 31 through 34, Appendix 10806, 10809. Second, Novoluto's expert provided no technical reasoning on why liver 3 would not move to the left. And third, the German— Novoluto's expert provided no technical reasoning, Your Honors, as to why liver 3 would not also move to the left of the center position. And third, the German Patent Office, in a contested proceeding involving Novoluto, found that Guan's airbag generates positive and negative pressures, just like how ICE described, by way of the liver 3 moving to the left. And that is at Appendix 2700 and 2702. The Board, however, addressed none of this evidence, which is so one-sided that it can only compel one conclusion, that Guan also generates negative pressure. Let me explain. So, Your Honor, if we can look at Appendix 10722. I'm going to start there. Please let me know when you're there. So here, Your Honors, Exhibit 1004, which is Guan's Figure 1, is illustrated. It shows a permanent magnet 4 in the center of an electromagnet 5. And the idea is that once you power on the electromagnet, the two... What page did you give us? Appendix 10722, Your Honor. Oh, okay. I think it's in the second. Yes. Okay, got it. So there, Guan says that once you apply power to the electromagnet, the liver in the middle is going to reciprocate. It's going to move to left and right, which is, it is going to move to two ends of the magnet. If it moves to the right end of the magnet, you're going to compress the airbag, create positive pressure. If you move to the left end of the magnet, you will create negative pressure. And that's precisely what even the German Patent Office found. If you look at Appendix 2700, the German Patent Office said, since the alternating compression and decompression of the airbag, which is analogous to the first chamber of the patent in suit, also generates a pressure field consisting of overpressure and negative pressure. And then on Appendix 702, the German Patent Office followed up by saying, look, the liver tree is going to move to the left and the right to create positive and negative pressure. Did you make these... I'm recalling on that issue, there's so many issues in this case, that this argument about the German Patent Office's... the German Patent Office's decision was introduced at the petition stage, but then it was obviously available to Novo Luto to rebut, and it was definitely extrapolated and expanded upon in the reply. But I also want to just look at, or I think we should look at... Well, they make an argument that you forfeited this argument, if I'm seeing in gray, you're saying something about that. Maybe I'm confusing the different arguments, which there are many. I will get back to you, Your Honor, with a side on that, but I do believe that this was raised. However, I think we also look at the horseshoe-shaped magnet. The only plausible explanation for what that magnet is going to do is going to pull the liver to the left as well to expand the air back, and that's going to create positive and negative pressure. Because if it did not do so, Your Honor, that entire left half of the electromagnet is a complete waste of space, and that's on Appendix 10725, 10726. This is the testimony of Dr. Prisco, where he explains in paragraph 34 that Novo Luto's testimony came plausible. And then, I think, Your Honor, I would like you to point to what was the responsive or opposing testimony from Dr. Jensen, Novo Luto's expert. His only technical reasoning as to why liver 3 would not move to the left to create negative pressure was simply this reference as pulsating pressure, and pulsating pressure means positive pressure, and that excludes negative pressure. There is a quote from his cross-examination, which I think we should look at together. Unfortunately, this portion of his testimony, even though it was cited in our opening brief, that did not make it into the joint appendix that Your Honors have, but it's Exhibit 1022. Can I ask you just one other question? I don't want to belabor this point, but I think on this argument made by your friend, which I think may be correct, is that this was all done in reply, and your citations in your brief are all to the reply and the reply expert declarations. Am I wrong about that? Your Honor, the argument or Dr. Jensen's testimony, obviously, is going to be cited in a reply. We don't have that at the petition stage. Now, what Goan does, how it works, how the liver moves to the left and right, that's already in the petition. That's already in the opening expert declaration. Now, certainly, a reply were allowed to respond to an argument. I take your point. And they did not move to exclude, Your Honor. So again, you know, so the quote or the testimony that I think we should look at together is Exhibit 1022, and it's page number 159. The question is, what words in Goan are you using to conclude that the bag is in its fully expanded position? Answer, the fact that Goan is creating a pulsating air pressure, that is indicative of the fact that the airbag from this position will only be compressed and will not return to its original position, which is the position shown in the figure. That's it. Based on the phrase pulsating pressure. That's all Dr. Jensen had to say. So here, again, the evidence is so one-sided that you can only draw a singular conclusion that the Board erred and the Board did not have substantial evidence to make a finding, which it did not, that Goan's airbag would not create negative pressure. Unless Your Honors have any question, I would quickly address the 097 patent. Your Honor, the 097 patent also concerns Goan. Goan's one issue, but there's a second issue in the 097 patent IPR, and that has to do with the motivation to combine Goan with legal. So what's missing from Goan is an appendage. It's an add-on limitation that has been thrown into the claim, and it serves no purpose beyond that there's an appendage in the device. Lee discloses that feature. It's also undisputed that what Lee has is a mechanical vibrator, as in the form of Arm Member 40, which provides direct stimulation. Direct stimulation simply means it's mechanical stimulation. It's mechanical pressure. And that was known as even the 097 patent acknowledges is undesirable. Indirect stimulation... So you're talking about the motivation to combine? Yes, Your Honor. Do we even need to reach that, though? You would need to reach it, Your Honor, for the 097 patent IPR, and the reason is this. There are two independent bases that the Board had for rejecting the ground. Right, and if we agree that there was substantial evidence to support its finding about Goan's not disclosing the pressure modulation thing, then isn't that a sufficient basis to affirm that, and why would we need to go to the motivation to combine? No, you would not need to go to motivation to combine, but again, I wanted to address that because it's a separate issue. Sure, sure. And Your Honor, I think I'll save the rest of my time for rebuttal, and if you have any questions. All right, that's fine. Ms. Terry? Good morning, Your Honors. May it please the Court. I'd like to address some of the points that were raised by counsel for ICE during their opening argument to clarify any kind of misimpressions there may be. There was a question asked as to whether the German Patent Office argument was forfeited, and whether that was an issue that we raised in our appellate brief. We did, at page 26 of the brief, we did point out that that argument was not adequately briefed in the underlying IPR, and therefore that argument was forfeited. Even if it wasn't, however, the German Patent Office findings regarding Goan in a foreign proceeding applying foreign patent laws on a foreign patent, or no, excuse me, not binding on the Board. The Board did thoroughly and very carefully consider all of the evidence that was presented before it in all three IPRs, not just once, but twice, and both times came to the conclusion that none of the prior art disclosed, taught, or suggested the claimed limitations, including the limitation requiring that there be modulated positive and negative pressures with respect to the ambient pressure acting on the device. What we're talking about here are sex toys. That's what these patents cover, and what was shown abundantly clear throughout the record was that there had not been any contemplation of indirect stimulation to a clitoris that applied both positive and negative pressures with respect to the ambient pressure modulated in a device. That simply wasn't shown anywhere, and that's true here in this case. What to re-weigh the evidence, to reconsider hypothetical modifications of the prior art that only exists in the imagination of ICE's counsel, and that were found to be completely unsupported, and in many instances... Okay, let me just turn you... There are a lot of issues here in different patents, but as to Goan, I think I've got the right one. Where the Board, you tried to argue this was not analogous art, and the Board rejected your argument. Isn't that there a little tension between its willingness to conclude there was a motivation to combine, and the fact that they rejected that they said it was analogous art? No, Your Honor, we don't find tension in that. Just because there may be art that is found to be analogous doesn't mean that there also exists a motivation to combine particular prior art references. If I may present an example in the real world, if you an automobile is a mode of transportation, and so is a bicycle. However, if someone is looking to invent a tricycle for a child that provides for an enjoyable and smooth ride, they're not necessarily going to be motivated to combine prior art relating to a jet engine from an airplane, a steering wheel from an automobile, and an adult seat for a road racing bicycle. That provides a good illustration of how there's not tension. Yes, it is true that a court can find, or a Board may find, that there are prior art that is considered to be analogous, but that doesn't mean that there's also evidence showing within that reference a motivation to combine that reference with another reference. And the Board thoroughly examined that in this case, and found that there was no such motivation to combine. They examined the arguments that ICE provided, and the expert testimony provided, and they found there was no basis to find a motivation to combine an acupressure device with a vibrator. They found there was no indication in either one of those references to combine those two to create an indirect stimulation device used for the clitoris. And so, Your Honor, we don't find a tension with those two, and we find that that's absolutely reconcilable. And back to the more important overarching issue, there was substantial evidence supporting all of the Board's findings that are at issue on this appeal. This isn't a question where there was the wrong legal standard applied. This isn't a question where there was erroneously applied legal standards. This is an issue where ICE is unhappy with the results that it got from the Board twice, and is now asking this court, under the guise of legal error, to revisit all this evidence. But the Board provided very clear and very detailed written opinions, 75 pages of opinions in each of these three cases, showing that it had thoroughly considered all of the evidence. The evidence overwhelmingly showed that ICE had not met its burden to show the unpatentability of the challenged claims in these patents. Now, Your Honors, if there are no further questions, I'll go ahead and close. Thank you. Thank you, Ms. Terry. Mr. Bonsall, you have some final comments. Thank you, Your Honors. So, Judge Prost, I think you asked me earlier about the citation. It's Appendix 864. That is our petition, Your Honor, and we reproduced on the top of Appendix 864 the same exact quote that I just read to you previously. So this was from an example. Now, Counsel Gordon-Ovado just noted about or argued that the Board did not apply a wrong legal standard. We respectfully disagree with that. The central issue, the primary dispute between the Board was, does Gwant's bag expand beyond its illicit position to create negative pressure? The Board made zero factual findings on this issue in its final decision. And when it comes to substantial evidence, which is what, again, Novoroto's counsel referred to, well, what is the substantial evidence for the Board's decision? The Board's entire analysis of Gwant has two paragraphs of into Gwant. It provides not a single technical reason as to why this very simple device is not going to work in the same manner that the German Patent Office said it would. Unless Your Honors have any further questions, I will give the court back its time. Okay, I thank both counsel. This case is taken under submission.